**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>v.<br><br>ANTONIO ESQUIVEL,<br><br>            Defendant. | Case No. 3:19-CR-00028-MMD-CLB<br><br>**ORDER DENYING MOTION TO RECONSIDER DETENTION AND GRANTING REQUEST FOR JUDICIAL NOTICE**<br><br>[ECF Nos. 139, 142] |

Currently pending before the Court is Defendant Antonio Esquivel's ("Esquivel") "motion for reconsideration" of the Court's detention order due to his claim that there has been a substantial change in circumstances. (ECF No. 139). Plaintiff, the United States, (hereinafter "the Government") opposed the motion, (ECF No. 140). Esquivel did not file a reply brief. The Government also filed a request for judicial notice related to the transcript of the detention hearing, (ECF No. 142), which the Court grants. For the reasons stated below, the Court denies Esquivel's motion for reconsideration.

**I.    BACKGROUND**

**A.    Procedural History**

Esquivel was indicted on May 23, 2019, with three counts of Distribution and Possession with Intent to Distribute Methamphetamine and Fentanyl and one count of Conspiracy to Possess with Intent to Distribute Methamphetamine and Fentanyl in violation of various federal laws. (ECF No. 1). Esquivel was indicted in the same case as his father, Alejandro De Jesus Mora, a.k.a. Antonio Esquivel Mora ("Mora") and Yesenia Garcia ("Garcia"). Ultimately, an amended arrest warrant was issued for Esquivel on February 13, 2020, clarifying Esquivel's identity, because he and his father have used the same name. (*See* ECF Nos. 29, 30, and 31).

Mora and Garcia were arrested on April 11, 2019. However, for over two years, the United States Marshals Service attempted to locate Esquivel to no avail. (ECF No.

140-1). Ultimately, on June 4, 2021, Esquivel was arrested in Sallisaw, Oklahoma following a traffic stop. (*See* ECF No. 140-2). On June 9, 2021, Esquivel made an initial appearance before a magistrate judge in the Eastern District of Oklahoma pursuant to Federal Rule of Criminal Procedure 5. (ECF No. 99-1 at 2). At that hearing, Esquivel waived his right to a detention hearing in the Eastern District of Oklahoma and requested his detention hearing be held in the District of Nevada. (*Id.* at 9, 12). The magistrate judge in the Eastern District of Oklahoma granted this request and ordered the United States Marshals Service to transport Esquivel to the District of Nevada for further proceedings. (*Id.* at 13).

On July 1, 2021, approximately one month after his arrest, Esquivel appeared in the District of Nevada for his initial appearance, arraignment, and plea. (ECF No. 101). Prior to the hearing, an attorney on the Court's Criminal Justice Act ("CJA") panel was contacted in assist in Esquivel's representation. At the hearing, the CJA attorney informed the Court that Esquivel had "retained" counsel, who had not yet made an appearance. Despite this, the CJA attorney confirmed she was prepared to represent Esquivel for purposes of his initial appearance, arraignment, and plea. Based on this information, the Court continued Esquivel's detention hearing for another week to allow retained counsel to make their appearance and prepare for the hearing. (*Id.*) Several days later, on July 7, 2021, Sean Neahusan entered an appearance on Esquivel's behalf in this case. (ECF No. 106).

B.     **Detention Hearing**

Esquivel's detention hearing took place on July 9, 2021. (ECF No. 111). Prior to the continued detention hearing, Pretrial Services provided a report to the Court and the parties detailing extensive information related to Esquivel's background, criminal history, financial circumstances, and the like.[1] As part of the investigation, Pretrial Services

---

[1] Pretrial Services Reports are not filed on the public docket due to the confidential nature of the information contained in those records. However, Pretrial Services provided its reports to the Court, which it reviewed in preparing this order.

interviewed Esquivel's girlfriend. In addition to providing information related to Esquivel's residence and living situation, Esquivel's girlfriend provided Pretrial Services with alleged "earning receipts" from casinos that alleged confirmed Esquivel earned thousands of dollars in gambling and to explain why Esquivel was in possession of a large sum of money at the time of his arrest.

At that hearing, the Government moved for detention. (ECF No. 141 at 5-7). First, the Government argued detention was appropriate because the rebuttal presumption of detention applied due to the charges. (*Id.* at 5.) Moreover, the Government underscored the various facts and circumstances related to Esquivel's arrest, prior history criminal history, and other facts that supported his detention pending trial. With respect to the circumstances surrounding Esquivel's arrest, the Government explained there was an indication that Esquivel was not entirely cooperative, and a narcotics K-9 positively alerted on the vehicle driven by Esquivel – indicating that over two years after he was indicted Esquivel was may have again been in possession of narcotics. (*Id.* at 6-7.) Moreover, although narcotics were not ultimately located in the vehicle, the arresting officers did locate $11,000 in Esquivel's possession at the time of the arrest. (*Id.*) The Government also argued it was highly unlikely that Esquivel did not know about the outstanding warrant for his arrest, given that his father is his co-defendant and had been arrested in 2019. (*Id.* at 5.) Thus, an inference could be drawn that Esquivel posed a risk of non-appearance given his ability to evade arrest for two years. Finally, the Government provided a description of the facts underlying the offenses in this case, which included the sale of large volumes of fentanyl and methamphetamine. (*Id.* at 8-9.)

In response, Esquivel's attorney admitted that the nature and circumstances of the offense weighed in favor of detention. (*Id.* at 11). In fact, Esquivel's attorney conceded that Esquivel's claim he did not know about the outstanding arrest warrant was "dubious" given his father's arrest. (*Id.* at 12.) However, Esquivel's counsel argued that he was not a flight risk, and he should be released pending trial based on his family ties and other factors. (*Id.* at 11-13.)

3

In ruling on the motion for detention, the Court expressly noted that this case triggers a presumption of detention due to the charged crimes. (*Id.* at 14.) The Court then considered and reviewed all the required factors under 18 U.S.C. § 3142(g) in making its ruling. (*Id.* at 15-21.) First, the Count determined that the factors all weighed in favor of detention, including the nature and circumstances of the offense, the weight of the evidence, and Esquivel's history and characteristics. The Court specifically noted that it did not believe Esquivel was unaware of the outstanding warrant given that his father and cousin, who are the co-defendants in this case, were both arrested over two years before, and his cousin had already entered a guilty plea. The Court also considered Esquivel's lack of employment, his claim that the large sum of cash was from "casino earnings", and whether his girlfriend would be a proper third-party custodian. Ultimately, after considering all of the evidence—including the casino earnings—and factors, the Court found that Esquivel should be detained pending trial and no conditions or set of conditions could be set to address these issues.

### C. Motion for Reconsideration

Esquivel has now filed a "motion for reconsideration" of the Court's detention order based on what he claims is "changed circumstances." (ECF No. 139). The only "changed circumstances" alleged by Esquivel are copies of casino earnings he claims prove that the cash in his possession at the time of his arrest were proceeds from his gambling and documents that appear to relate to Esquivel's prior employment. (*Id.* at 3.)

The Government opposed the motion. (ECF No. 140). First, the Government argues that this motion appears to be an untimely attempt to appeal the magistrate judge's detention order and should be rejected. However, to the extent the Court may consider the merits of the argument or to re-open detention, the Government argues that the prior information provided to the Court coupled with additional information related to his activities leading up to his indictment (including several border crossings and inconsistencies with the information provided to Pretrial Services prior to the original detention hearing), fully support detention in this case. (*Id.*)

## II. DISCUSSION

Esquivel's motion indicates that it was filed pursuant to 18 U.S.C. § 3145(c). (ECF No. 139.) The Court agrees with the Government, that to the extent Esquivel is attempting to "appeal" the prior order of detention, it appears to be untimely. However, as Esquivel claims that he filed this motion based on "changed circumstances," it is appropriate for the magistrate judge to consider these changed circumstances in the first instance. Therefore, the Court construes Esquivel's motion as a motion to re-open detention pursuant to 18 U.S.C. § 3142(f)(2), as opposed to an appeal.

### A. Legal Standard – Motion to Reopen

"A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish,* 441 U.S. 520, 536 (1979) (internal quotations omitted). The government may detain someone on a federal offense to ensure his presence at trial and may subject him to the restrictions and conditions of detention so long as those conditions do not constitute punishment or otherwise amount to a constitutional violation. *Id.* at 536-37.

The Bail Reform Act ("BRA") of 1984 mandates every person charged with a federal offense be given a detention hearing. 18 U.S.C. § 3142(a). The fundamental precept of the BRA mandates the release of individuals so long as the court can reasonably be assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide for such assurances, the individual must be released, as detention is "the carefully limited exception." *Id.; see also United States v. Salerno,* 481 U.S. 739, 755 (1989). If the judge finds the defendant poses a danger to public safety or a flight risk, the defendant may be ordered detained. 18 U.S.C. § 3142(f).

However, section 3142(f)(2) permits a judicial officer to reopen a detention hearing at any time before trial if the judicial officer finds that information exists that was not known

to the movant at the time of the detention hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person and the safety of any other person and the community. Courts interpret this provision strictly. *United States v. Bararia,* No. 2:12-cr-00236-MMD-GWF, 2013 WL 1907782, at *4 (D. Nev. Mar. 12, 2013); *e.g., United States v. Ward,* 63 F.Supp.2d 1203, 1206-07 (C.D. Cal. 1999); *United States v. Dillon,* 938 F.2d 1412, 1415 (1st Cir. 1991). The rule requires the movant, whether prosecutor or defendant, establish: (1) that information now exists that was *not known to the movant* at the initial detention hearing; and (2) the new information is material to release conditions regarding flight or dangerousness. *Id.*; *see also United States v. Bowens,* 2007 WL 2220501 (D. Ariz. Jul. 31, 2007) (citing *United States v. Hare,* 873 F.2d 796 (5th Cir. 1989).

Generally, once a detention hearing is reopened, it is reopened to allow the court to receive any information, within reason, not submitted at the initial hearing, allowing the new information to be considered in context. *Id.* If the information was available at the time of the original hearing, the detention hearing need not be reopened. *United States v. Turino,* 2014 WL 5261292, at *1 (D. Nev. Oct. 15, 2014) (citing *Ward,* 63 F.Supp.2d at 1206).

**B.     Analysis**

The only "changed circumstances" identified by Esquivel with respect to his motion are documents related to casino earnings, which allegedly explain why Esquivel had $11,000 in cash found in his possession at the time of his arrest and some documents related to Esquivel's sporadic employment prior to his arrest. Esquivel claims that the documents he submitted prove he obtained the money in his possession through gambling and that he had prior employment. He argues this documentary evidence is new and therefore supports a "changed circumstance" that would support re-opening detention.

However, the information identified by Esquivel is not information that was "unknown" to Esquivel at the time of the original detention hearing. In fact, the information

related to his alleged casino winnings was not only known to Esquivel at the time of the original detention hearing, but it was also known to Pretrial Services and the Court. The same is true of Esquivel's prior employment history. The Court considered this information, along with various other facts and circumstances, in reaching its detention decision. Therefore, this information does not support a basis to reopen detention as it is neither new information, nor does it materially change the detention decision. As such, Esquivel has failed to establish that new information has become available to him that was unavailable to him at the time of the original detention hearing, which has material bearing on the issue of detention. Therefore, Esquivel's motion to reopen detention fails on this basis alone.

However, even if the Court were to assume that these documents did somehow support reopening detention, the motion must still be denied because this evidence would not change the Court's analysis or determination with respect to detention. In fact, if the Court reopened detention for consideration of this information, the Court would also consider the new information provided by the Government. This new information further supports and, in fact, strengthens the Court's determination that detention was and remains proper in this case.

Here, even if the money in Esquivel's possession at the time of his arrest was obtained through gambling and not other illicit activities, the Government's additional evidence appears to show a substantial number of border crossings by Esquivel over several years prior to his arrest. This information was not known to the Court or Pretrial Services at the time of the original hearing, and it underscores that Esquivel's foreign ties are far more extensive than previously known. In fact, at the time of the initial detention hearing, Esquivel merely claimed that he had an "enhanced driver's license" that allowed him to travel outside the United States. However, there is no mention of his extensive travel to and from Mexico in the years leading up to the indictment.

In addition, when interviewed by Pretrial Services, Esquivel claimed he lived exclusively with his girlfriend in California in the year prior to his arrest in June 2021,

although he could not recall the address. However, his girlfriend's statements contradict this information. Specifically, his girlfriend stated Esquivel split his time between living with her in California for three to four weeks at a time and then he would allegedly return to Washington. Pretrial Services could not verify this information with Esquivel's mother or anyone else who lived in Washington at that time.

However, based on new information submitted by the Government, it appears this information was also false. Esquivel's mother, who lived in Washington, was interviewed by law enforcement on or around January 2021 in the United States Marshals Service efforts to locate Esquivel. (ECF No. 140-1 at 3.) This interview took place a few months before Esquivel's arrest—during the time frame that Esquivel's girlfriend claimed he would go to Washington. In her interview, Esquivel's mother stated that she "had not heard from [her son] in over a year" and the last she heard, he was living in Michoaca'n, Mexico. (*Id.*) She also claimed she had no way to contact him. (*Id.*)

Moreover, during his interview with Pretrial Services, Esquivel claimed that prior to his arrest in June 2021, he spoke with his two children, who lived with their mother in Washington, daily. However, his children's mother was also interviewed by the Marshals in January 2021. During this interview, she also stated she had not talked to Esquivel "in over a year," she had no way to contact him, and if he did contact her, she would **not** contact law enforcement. (ECF No. 140-1 at 2.)

These facts contradict the information Esquivel provided to Pretrial Services at the time of the detention hearing. Specifically, this information undermines his claims of close family ties based on his relationship with his children and further underscores his additional foreign ties and ability to evade law enforcement. In fact, this information appears to support an inference that Esquivel may have been going somewhere other than Washington during the intervals that he was not in California with his girlfriend—such as Mexico. This information also supports the Court's prior determinations that Esquivel likely knew of the pending arrest warrant prior to his arrest and was successful in eluding law enforcement for over two years. This information, coupled with Esquivel's extensive

ties to Mexico and the contradictory information provided by Esquivel and his girlfriend to Pretrial Services and the information his family provided during the investigation into his whereabouts, further strengthen and support this Court's finding that he poses a risk of non-appearance. Moreover, given the contradictory information and the inferences that can be drawn of Esquivel's evasion, it does not appear that any of these individuals would be suitable third-party custodians, the homes of his current girlfriend or other family members would not be suitable if he were released, and location monitoring would likely be ineffective given Esquivel's prior history of evasion.

Therefore, even if the Court were to re-open detention and considered the new evidence presented by the parties, the Court finds that the evidence establishes that Esquivel poses both a risk of flight and danger to the community and there is no condition or combination of conditions that could be set to assure his appearance or the safety of the community in this case.

### III. CONCLUSION

**IT IS THEREFORE ORDERED**, for all the reasons stated above, Esquivel's motion for reconsideration, (ECF No. 139), is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's motion request for judicial notice, (ECF No. 142), is **GRANTED.**

**IT IS SO ORDERED.**

**DATED**: October 26, 2021.

**UNITED STATES MAGISTRATE JUDGE**